Margaret HUDSON, Appellant,

v.

INDEPENDENT SCHOOL DISTRICT NO. 77, a. k. a. Mankato Public Schools, Respondent.

No. 47153.

Supreme Court of Minnesota.

Sept. 16, 1977.

---

Oppenheimer, Wolff, Foster, Shepard & Donnelly and Craig W. Gagnon, St. Paul, for appellant.

McLean, Peterson, Sullivan & Haugh and E. D. McLean, Mankato, for respondent.

Heard before ROGOSHESKE, MacLAUGHLIN, and PLUNKETT, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

The issue raised on this appeal by plaintiff teacher is whether tenure rights of a public school teacher, assured by the continuing-contract provision of Minn.St. 125.12, are applicable to a substitute teacher who replaces tenured teachers on leaves of absence for a continuous period of more than one school year. The trial court, in declaratory judgment proceedings, held that Minn.St. 123.35, subd. 5, authorizing the hiring of substitute teachers, did not prevent a school district from hiring a substitute for 1 year or longer to replace tenured or "regular" teachers on leaves of absence, and that a substitute hired under such circumstances was not entitled to tenure rights under the continuing-contract provisions of § 125.12. We are persuaded that the trial court's decision is consistent with the legislative purposes underlying these statutes and affirm the judgment rendered.

Plaintiff, Margaret Hudson, is a state-certified, elementary school teacher who had accumulated 7 years of experience with the Minnetonka Public School District prior to moving to Mankato. On August 23, 1973, she was hired by defendant, Independent School District No. 77, to substitute for Connie Sabin, a regular tenured teacher on sick leave. At the time plaintiff was hired, she was issued a "Short-Term School Service Contract" which clearly indicated that the term of her employment was to end on December 21, 1973, and that she was receiving a limited contract "in lieu of a continuing contract." Subsequently, when Ms. Sabin's leave of absence was extended for the balance of the school term, plaintiff received a second and substantially similar short-term contract which was to end on June 8, 1974. On March 7, 1974, plaintiff was notified by a letter from the school superintendent that her teaching services would no longer be needed at the completion of the 1973–74 school year.

The following term, plaintiff was rehired as a substitute teacher, this time to replace a Mrs. Julie Schultz, who had been given a medical leave of absence for the entire 1974–75 school year. Plaintiff was again issued a short-term contract and informed by correspondence, prior to April 1, that the need for her services would end at the completion of the term. The termination notices for each of these first 2 years came in the form of school board resolutions.

During the summer of 1975, Mrs. Schultz resigned and Ms. Sabin requested another medical leave of absence for the first 8 weeks of the 1975–76 school year. To fill the temporary vacancy caused by Ms. Sabin's absence, plaintiff was again hired as a substitute teacher by defendant school district. In contract to the preceding 2 years, plaintiff did not receive a written contract; however, a letter from the assistant superintendent dated September 11, 1975, indicated that for salary purposes she would be considered an "extended-term substitute."

Subsequently, Ms. Sabin requested, and was granted, an extension of her leave of absence for the balance of the term. Because of this development, defendant offered plaintiff an "Acting Incumbent Contract" on January 19, 1976, that was to run for the remainder of the 1975–76 academic year.

Acting upon the advice of her attorney, plaintiff refused to sign this contract on the ground that her prior substitute service with defendant entitled her to tenure rights under the continuing-contract provisions of § 125.12, subd. 4. Although defendant refused to issue plaintiff a continuing contract, she was initially given the option of continuing her employment on a daily substitute basis. Later, defendant retracted this option and informed plaintiff that she could either sign the "Acting Incumbent Contract" by March 29, 1976, or be terminated on April 2.

Following this ultimatum, plaintiff commenced the present action seeking a judicial declaration that she was a tenured teacher and a court order requiring defendant to issue her a continuing contract. The trial court rejected these claims and held that plaintiff was at all times relevant a substitute teacher who had been properly hired under § 123.35, subd. 5, to replace regular teachers on leaves of absence, and that, as such, she was not entitled to a continuing contract under § 125.12, subd. 4.

To understand the competing arguments advanced by both parties to this appeal, it is necessary to briefly set forth the statutory law governing teacher tenure rights and the hiring of substitute teachers. When a teacher is initially hired to fill a permanent vacancy, § 125.12, subd. 3, provides that the first and second consecutive years of employment shall be deemed a probationary period. If a teacher has previously been tenured by another Minnesota school district, as was the case with plaintiff, the probationary period is reduced to one complete school year. During the probationary period, a teacher may be terminated for virtually any reason, provided the teacher is notified prior to April 1.[1] Once this period is completed, § 125.12, subd. 4, provides that a teacher "shall have a continuing contract with such district." Thereafter, a continuing-contract teacher may only be discharged for cause in accordance with the statutory procedures outlined in § 125.12.

The power to hire both permanent and substitute teachers is vested in the school districts by § 123.35, subd. 5:

"The [school] board shall employ and contract with necessary qualified teachers and discharge the same for cause, *but no substitute teacher shall be hired except to replace a regular teacher on leave of absence or in an emergency of less than one school year's duration.*" (Italics supplied.)

As is readily apparent, this statute empowers a school board to hire a substitute only when a regular teacher has taken a "leave of absence" or when a valid "emergency" exists.

■ There is no dispute that when a school district hires a substitute for an "emergency" § 123.35, subd. 5, limits such employment to "less than one school year's duration." It is equally clear that if a school board attempts to circumvent this restriction the substitute will acquire probationary status and begin the statutory progression toward tenure contemplated by § 125.12. This consequence is the result of our recent decision in *Perry v. Independent School Dist. No. 696*, 297 Minn. 197, 201, 210 N.W.2d 283, 286 (1973), where we held:

"A school board has no authority to except a teacher's contract from the continuing contract statute by offering yearly contracts designating the teacher as a ' * * * substitute.' If the employee comes within the statutory definition of teacher and is hired for an emergency which exceeds the period for which a substitute can be hired, the continuing contract statute applies regardless of the terms of the contract itself."

Since no claim is made that the district was attempting to circumvent tenure rights afforded by § 125.12, the precise question

1. Now June 1. L. 1977, c. 447, art. VII, § 21.

that must be resolved is whether the less-than-1-year limitation set forth in § 123.35, subd. 5, also applies to substitutes hired to replace a regular teacher on a bona fide "leave of absence." If this limitation applies, the holding in the Perry case would compel us to find that plaintiff, who taught more than 2 years as a substitute for regular teachers on leave, acquired tenure status.

Section 123.35, subd. 5, is regrettably not a model of legislative draftsmanship, for it is impossible to determine what the phrase "of less than one school year's duration" modifies, using simple grammatical analysis. We therefore believe that it would be inappropriate to resolve this issue by placing reliance on technical rules of grammar. See, Minn.St. 645.18; *Judd v. Landin,* 211 Minn. 465, 1 N.W.2d 861 (1942). We are also not convinced that § 123.35, subd. 5, may be read in pari materia with § 125.12, as plaintiff has argued, to yield the result that the 1-year limitation was intended to govern the hiring of substitutes to replace regular teachers who have taken leaves of absence. Rather, the proper construction of § 123.35, subd. 5, must depend on the intent of the legislature and the practicalities surrounding the employment of substitute teachers.

■ The overriding legislative purpose behind the tenure laws was undeniably the prevention of arbitrary demotions and discharges of teachers without regard to their ability. This policy was well stated in *McSherry v. City of St. Paul,* 202 Minn. 102, 108, 277 N.W. 541, 544 (1938):

"Plainly, the legislative purposes sought were stability, certainty, and permanency of employment on the part of those who had shown by educational attainment and by probationary trial their fitness for the teaching profession."

Balanced against this legislative goal is the need to allow the school board enough latitude to administer effectively the operation of the public schools. See, *Keller v. Independent School Dist. No. 742,* 302 Minn. 324, 224 N.W.2d 749 (1974); *Foesch v. Independent School Dist. No. 646,* 300 Minn. 478, 223 N.W.2d 371 (1974). Within this framework, it is evident that the 1-year time limitation contained in § 123.35, subd. 5, makes sense when substitutes are hired to fill emergency vacancies. Certainly, a school board should not be allowed to perpetuate an "emergency" ad infinitum in order to evade the tenure laws by hiring substitute teachers at reduced pay.

But an emergency situation is inherently different from the situation that exists when a substitute must be hired to replace a regular teacher on a leave of absence. Unlike an emergency, a leave of absence can only last for a specific length of time, after which the regular teacher will return. Consequently, the legislature would have had no reason to limit substitute service to less than 1 year because the potential for avoidance of the tenure laws by the school board is nonexistent. It is also not unusual for a regular teacher to request a leave of absence for an entire school year. Additionally, the acquisition of tenure rights by a substitute teacher potentially might result in enlarging the staff beyond need, or preclude rehiring a substitute teacher who furnished service for more than one school year. If a school board was prevented from filling a temporary vacancy without running into the tenure requirements of § 125.-12, we believe that it would lack the flexibility needed to effectively discharge administrative responsibility.

We therefore conclude that the legislature only intended § 123.35, subd. 5, to limit the hiring of substitute teachers to less than one school year's duration in the case of an emergency. It follows that plaintiff was properly hired to replace regular teachers on leaves of absence, even though the term of her continuous service exceeded 1 year, and that she did not acquire tenure rights within the contemplation of § 125.12.

Affirmed.

SHERAN, C. J., took no part in the consideration or decision of this case.