**MINNEAPOLIS FEDERATION OF TEACHERS, LOCAL 59, et al., Respondents,**

v.

**MINNEAPOLIS SPECIAL SCHOOL DISTRICT NO. 1, Appellant.**

**No. 48050.**

Supreme Court of Minnesota.

Sept. 1, 1978.

**7.** Even if the trial court's ruling had been error, we would be able to hold it harmless beyond a reasonable doubt.

Lindquist & Vennum and Jerrold F. Bergfalk, Minneapolis, for appellant.

Peterson, Engberg & Peterson and Bruce P. Grostephan, Roger A. Peterson, Minneapolis, for respondents.

Heard before PETERSON, KELLY, and YETKA, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

Plaintiffs, Minnesota Federation of Teachers and four individual members, brought this action against defendant, Minneapolis Special School District No. 1, seeking a declaratory judgment construing Minn.St. 125.17, the teacher tenure statute for first-class cities. After a bench trial, the district court entered judgment declaring that the four individual plaintiffs were entitled to tenure. On appeal, defendant challenges the trial court's decision as to

two of the individual plaintiffs, Marsha Seltz and Annette Smith.

The provisions of the tenure statute which govern this case are subds. 2 and 3. In pertinent part, subd. 2 provides:

"All teachers in the public schools in cities of the first class during the first three years of consecutive employment shall be deemed to be in a probationary period of employment during which period any annual contract with any teacher may, or may not, be renewed as the school board shall see fit."

That provision is followed by subd. 3, which in pertinent part provides:

"After the completion of such probationary period, without discharge, such teachers as are thereupon re-employed shall continue in service and hold their respective position during good behavior and efficient and competent service and shall not be discharged or demoted except for cause after a hearing."

█ 1. Turning first to plaintiff Seltz, the trial court held that her work as a teacher for defendant during the 1973–1974, 1974–1975, and 1975–1976 school years constituted "three years of consecutive employment" under subd. 2, so that when she was reemployed by defendant for the 1976–1977 school year, she acquired tenure under subd. 3. Seltz was employed as a classroom teacher under written 1-year probationary contracts during the 1974–1975 and 1975–1976 school years, and it is undisputed that she had fulfilled 2 of the 3 years necessary for tenure.

The focus of dispute is Seltz' employment during the 1973–1974 school year. Between September 18, 1973, and October 1, 1973, Seltz was employed by defendant for 6.7 days as a "short-call" substitute teacher. On October 2, 1973, a few weeks after the school year began, she took the place of a regular classroom teacher who had been injured in an automobile accident, and she continued in the injured teacher's place until the end of the school year. During this period, Seltz was classified by defendant as a "long-call" substitute teacher.[1] The trial court found, as fact, that "Seltz during her service as a long-call reserve [substitute] teacher performed all tasks customarily attributed to regular classroom teachers * * *."

The trial court, in concluding that Seltz had acquired tenure, implicitly found that the 1973–1974 school year constituted a probationary year for purposes of acquiring tenure. Although we view the issue a close one, we are persuaded that, in the unique context of this case, the decision is not inconsistent with the objectives of the statute.

Defendant, in contending that Seltz' substitute work in the 1973–1974 school year does not qualify as the first of the "three years of consecutive employment" required under the statute, relies on our recent decision in *Hudson v. Independent School Dist. No. 77*, Minn., 258 N.W.2d 594 (1977). Hudson, the teacher claiming tenure in that case, was initially hired at the beginning of the 1973–1974 school year to substitute for a regular teacher who was on a short-term medical leave. The regular teacher's leave was extended and Hudson taught the entire 1973–1974 school year. The next year, 1974–1975, Hudson was again hired as a substitute and again taught the entire year in place of a regular teacher on leave. When Hudson was reemployed for the 1975–1976 school year, she claimed she had completed 2 full years of probationary teaching, followed by reemployment, and thus had acquired tenure under Minn.St. 125.12, the tenure statute for districts outside first-class cities.[2] We held that Hudson had not acquired tenure because her employment had been as a substitute pursuant to the school board's statutory power to employ substitutes.

---

1. Seltz was also employed as a "long-call" substitute classroom teacher from January 8, 1973, to the end of the school year, replacing a teacher who had retired.

2. Minn.St. 125.12, governing nonfirst-class cities, and § 125.17, governing first-class cities, are analogous except that under § 125.12 2 rather than 3 probationary years are required for tenure.

*Hudson,* as well as this case, clearly did not involve situations where teachers were labeled "substitutes" in bad faith or where substitute classification was continued "ad infinitum in order to evade the tenure laws." Minn., 258 N.W.2d 597.[3] Addressing the situation of good faith classification of teachers as substitutes, we said:

"* * * the acquisition of tenure rights by a substitute teacher potentially might result in enlarging the staff beyond need, or preclude rehiring a substitute teacher who furnished service for more than one school year. If the school board were prevented from filling a temporary vacancy without running into the tenure requirements of § 125.12, we believe that it would lack the flexibility needed to effectively discharge administrative responsibility." Minn., 258 N.W.2d 597.

■ We think the Seltz situation is distinguishable from that of *Hudson* in one critical respect: Unlike Hudson, who was hired as a long-call substitute for 3 consecutive years, Seltz was hired as a regular probationary teacher for 2 years after her initial service as a substitute—a substitute period in which she worked substantially the whole of the year. A primary legislative purpose of the teacher tenure law, as we said in *McSherry v. City of St. Paul,* 202 Minn. 102, 108, 277 N.W. 541, 544 (1938), is to provide "stability, certainty, and permanency of employment on the part of those who had shown by educational attainment *and probationary trial their fitness for the teaching profession.*" (Italics supplied.) Here, the unchallenged finding of the trial court is that "Seltz, during her service as a long-call reserve teacher, performed all tasks customarily attributed to regular classroom teachers," which accorded the

school administrators the opportunities for evaluation that would have been available had she been under a regular probationary contract.

■ We do not retreat from the thrust of the holding in *Hudson v. Special School Dist. No. 77,* Minn., 258 N.W.2d 594, that those charged with responsibility for administering the schools have a legitimate interest in the good faith employment of substitute teachers to fill temporary vacancies either on a short-call or long-call basis. The granting of the regular probationary contract after Seltz' initial year (and more, considering her 6 months' long-call service in the 1972–1973 year) is a more serious commitment to a teacher than would be the shifting of long-call substitute assignments in subsequent years. Allowing this teacher to count her long-call substitute teacher service toward a probationary period in the particular circumstances of this case does not seem to be a serious interference with necessary administrative flexibility. We accordingly affirm the judgment as to Seltz.

■ 2. Turning now to plaintiff Smith, the trial court held that Smith also acquired tenure on the basis of her employment during the 1973–1974, 1974–1975, and 1975–1976 school years, followed by employment for the fall of 1976. During the 1973–1974 school year, the first year on which the trial court based tenure, Smith was employed by defendant at Bryant Junior High School as a "Title I Tutor," teaching 25 hours per week. Smith taught four classes per school day to students who needed special help in social studies. During the 1974–1975 school year, Title I Federal funding was not available at Bryant School so Smith was employed at Marshall-University High School

---

**3.** Where the classification of a teacher as a "substitute" is not in good faith, it will be counted toward tenure. In *Perry v. Independent School Dist. No. 696,* 297 Minn. 197, 210 N.W.2d 283 (1973), the teacher seeking tenure had been classified as a "substitute" because the school had a policy of hiring married female teachers only as substitutes. In *McSherry v. City of St. Paul,* 202 Minn. 102, 277 N.W. 541 (1938), the teacher was employed for 2½

years as a "supply substitute" and then discharged "for the obvious purpose of interrupting her tenure rights." 202 Minn. 110, 277 N.W. 545. In *Hosford v. Board of Education,* 201 Minn. 1, 275 N.W. 81 (1937), the teacher completed 3 years of probationary service under 1-year contracts, but was then reemployed as a "substitute" in order to evade the tenure laws. In each of these three cases, we held that the teacher had acquired tenure.

as a "Special Learning and Behavior Problems (SLBP) Tutor," teaching 20 hours per week. During the 1975–1976 school year, the third year on which the trial court based tenure, Smith returned to Bryant School as a "contract teacher" under a 1-year probationary contract. Smith worked in the school's special education department teaching reading to students requiring special assistance. For the 1976–1977 school year, Smith was reemployed at Bryant School as a Title I Tutor teaching 15 hours per week.

The trial court found, as fact, that—

"Smith, as a tutor, performed all tasks, pedagogical and non-pedagogical, customarily attributed to classroom teachers including, but not limited to, lesson planning, attending faculty meetings and open houses. Therefore, Smith was 'regularly employed' as a teacher for those two years she served as a tutor."

Based on this finding concerning Smith's 2 school years as a tutor, and Smith's probationary employment the following year as a contract teacher, the trial court concluded as a matter of law that Smith had "tenure as an SLBP teacher." We agree that Smith has tenure, but in our view her tenure is as a tutor, since this was Smith's position for 2 of the 3 years on which the trial court based tenure, and also the position for which Smith was reemployed after those 3 years.

■ Our analysis of Smith's status proceeds in three steps. First, we note that the tenure statute, Minn.St. 125.17 subd. 1(a), provides:

"The term 'teacher' includes every person regularly employed, as a principal, or to give instruction in a classroom, * * or as placement teacher and visiting teacher. * * *"

On the record before us we find no reason to dispute the trial court's finding quoted above concerning Smith's duties during her 2 years in the position of tutor. During these 2 years, Smith was a "teacher" in the generic sense of that term and thus, under the statutory definition, a "teacher" for purposes of the tenure statute, even though her specific employment was as a "tutor" rather than a "regular contract teacher."

Second, we see that Smith has completed the statutory "three years of consecutive employment" in positions which qualify as that of "teacher" under the tenure act. Thus, when Smith was reemployed she acquired tenure. Tenure, in the words of subd. 3, is the right to "hold [her] respective position during good behavior and efficient and competent service and shall not be discharged or demoted except for cause after a hearing."

This brings us, third, to the critical question of what "respective position" Smith holds under subd. 3 of the tenure statute. The trial court did not specifically address this question but stated in its conclusions of law that Smith "has qualified for tenure as an SLBP teacher." It appears that in expressing this conclusion of law, the trial court was not using the term "teacher" in the generic sense of a person who instructs students and is protected by the tenure statute. Instead, it appears that the trial court was using the term "teacher" to indicate its conclusion that under the tenure statute Smith's "respective position" was as a regular contract teacher rather than tutor. If this was the trial court's intended conclusion, we must disagree.

The tenure statute recognizes and preserves the distinctions between various specific positions within the teaching profession. This is well illustrated by the leading case of *State ex rel. Ging v. Board of Education,* 213 Minn. 550, 7 N.W.2d 544 (1942), on which both Smith and defendant rely. In that case, Ging, a tenured teacher, taught sociology and history and for many years was also head of his school's social science department, a post for which he received additional compensation. Because of declining enrollment and a shift from academic to vocational subjects, the school board had an undisputed need to reduce the size of its tenured faculty. The school argued that Ging's "respective position" for tenure purposes was as a "teacher of the school district" and that Ging could be terminated from that "position" and someone

else appointed to head the social science department. This court disagreed and held that Ging's "respective position" for tenure purposes was "head of the social science department and teacher of sociology and history in the high schools." 213 Minn. 586, 7 N.W.2d 563. Therefore, Ging could only be dismissed if that position was eliminated due to lack of students.

The *Ging* case clearly indicates that the tenure act recognizes that teachers (in the generic sense) occupy a variety of different positions which involve different duties and compensation.[4] Just as the school board in the *Ging* case could not overlook Ging's position as "head of the social science department," so too we cannot overlook Smith's position as "tutor" during 2 of the 3 years on which her tenure was based and when she was subsequently reemployed to first acquire tenure.

▪ The record clearly shows that those in the position of "tutor" typically start work later in the school year, teach fewer classes per day, are likely to teach different subjects, and are paid differently from those in the position of regular contract teacher. These important differences between the positions *regular contract teacher* and *tutor* cannot be overlooked simply because the occupants of both positions are, in the generic sense, "teachers" whose positions are protected under the tenure statute. The tenure statute was not intended to eliminate the distinctions between various types of teaching positions which have been created by those charged with administering the schools.[5] To the contrary, the statute is intended to insure that school authorities respect the distinct positions they have established. The statute requires that tutors be recognized as having tenure, but the statute does not require that school authorities recognize tutors as having tenure as regular contract teachers. Since in this case Smith held the position of tutor for 2 of the 3 years of employment on which her tenure was based and was thereafter reemployed as a tutor, her "respective position" for purposes of the tenure act is as a tutor. We accordingly reverse the judgment of the trial court.

Affirmed in part; reversed in part.

SHERAN, C. J., took no part in the consideration or decision of this case.

---

**4.** Cases subsequent to *State ex rel. Ging v. Board of Education,* 213 Minn. 550, 7 N.W.2d 544 (1942), indicate a judicial willingness to defer to the reasonable judgment of school authorities in distinguishing various "positions." See, *Foesch v. Independent School Dist. No. 646,* 300 Minn. 478, 223 N.W.2d 371 (1974), where we remanded to the board of education to make such a determination in light of mod-

ern educational practices. See, also, *Jordahl v. Independent School Dist. No. 129,* 302 Minn. 286, 225 N.W.2d 224 (1974).

**5.** Nor does the tenure statute provide any basis for us to substitute our judgment for that of the school board's in weighing the educational merits of establishing the two distinct positions.