[1] Reported in 284 N.W. 838.
Herman Beier died testate July 8, 1922, a resident of Fillmore county. His will, dated May 16, 1922, was duly admitted to probate on August 14. On January 2, 1923, letters testamentary were issued to respondent, decedent's only son. On December 4, 1937, the probate court issued its final decree. Appellant, Louisa A. Kohn, a daughter of decedent, being dissatisfied, perfected an appeal to the district court, where the matter was heard de novo. That court *Page 45 
made findings confirming the decree, and she appeals from the resulting judgment.
Testator by the second paragraph of his will directed that his wife, Ernstina N. Beier, should take —
"all my property and estate, both real and personal and wherever located, as the same shall be and exist at the time of my death, to have and to hold the same as hers during her lifetime only, with the absolute right to all the interest, rents, issues, profits and income therefrom during said time." Out of such income she was required to pay all taxes "that may be legally assessed and levied against my said property and also keep such of my property as is liable to destruction by fire, insured against loss by fire and lightning to its full insurable value and in case of loss such insurance received shall become part of the capital estate or may be used in replacing the property destroyed, as my wife may deem best."
Decedent's real estate consisted only of his homestead, valued at $3,500. This property, by the third paragraph of the will, was devised to his daughters Bertha A. Weber and Louisa A. Kohn, subject to the wife's life estate. The gift was also conditioned that the two daughters should pay to his two grandchildren Clara H. Kohn (now Flynn) and Albert Kohn $1,000,i. e., $500 to each grandchild, such payment to be made "as soon as convenient after the death of my said wife * * * but shall be made within one year from said time." Then follows this important statement: "I have purposely omitted any bequests to my Son Fred W. Beier for the reason that I have already given him his just share of my Estate in the sale of the farm to him." The wife, on the same date as that of the making of the will, and "being fully advised as to the terms and conditions of said will," assented thereto and agreed "to take under the provisions thereof in lieu of my statutory interest and hereby expressly waive my statutory rights as surviving spouse under the laws of this state * * *." On June 30, 1922, the son also assented thereto and agreed "to the conditions of said will and waive my statutory rights as to myself, my heirs or assigns as said surviving son or heirs under the laws of this State as now or may hereafter be in force." *Page 46 
Thus, as will be seen, testator made no provision for the disposition of his residuary estate. As a consequence, both trial courts held that as to the residuary estate decedent died intestate. So, in accordance with the terms of the will, the widow was adjudged to be the owner of a life estate in all of testator's property, including the homestead. After her death each of his two daughters was given an undivided one-half interest in the homestead subject to the payments to be made to the two grandchildren. As to the residue remaining after the death of the widow, the court ordered and decreed that the two daughters and son should each receive an undivided one-fourth; and to Clara H. Flynn, a granddaughter, and Albert Kohn, a grandson, being the children of a deceased daughter of said decedent, each should have and receive an undivided one-eighth.
The issue presented here is limited to the right of the son to share in the residuary estate. Appellant's contention is that the probate court erred "in that part thereof where the son of the decedent, Fred W. Beier, was permitted and included as one who was to share in the remainder of the principal of the personal property of the decedent." The basis for this claim is that the will as a whole "discloses that advancements had been made to Fred W. Beier for the son's full share of the decedent's property and that the son consented thereto in writing"; hence that, having so consented, he is precluded from taking as an heir.
Appellant conveniently arranges under three headings her assignments of error: (1) That "the sale of the farm, together with the statement in the will by the decedent, coupled with the respondent's endorsement attached to the will, did * * * constitute an advancement"; (2) that respondent released "his share in the remainder" of the estate by reason of testator's statement in his will coupled with respondent's consent thereto; and (3) that respondent is "estopped from claiming any share in said estate" for the same reason.
1. An advancement in its strict and technical sense "is a perfect and irrevocable gift, not required by law, made by a parent, *Page 47 
during his lifetime, to his child, with the intention on the part of the donor that such gift shall represent a part or the whole of the portion of the donor's estate that the donee would be entitled to on the death of the donor intestate." 1 Am.Jur., Advancements, § 3, and cases cited under note 10.
And this court in Leach v. Leach, 162 Minn. 159, 161,202 N.W. 448, 449, said:
"A good definition of an advancement is found in 18 C. J. p. 911:
" 'In its legal sense * * * an advancement is an irrevocable gift in praesenti of money or property * * * to a child by a parent to enable the donee to anticipate his inheritance to the extent of the gift.' "
2-3. There is of course a well defined distinction between an advancement and a debt or loan. An advancement involves a transfer of property without consideration, and there is therefore no obligation of repayment. Nor is it a gift, as a gift carries with it no obligation whatever. An advancement, on the other hand, although a gift in the sense that it is not to be repaid, is subject to the doctrine of hotchpot, requiring the donee to account for the advancement before he will be permitted to share in the intestate's estate. Also to be noted in the case of a gift from a parent to a child, there is a purpose that the property given is to go to the child over and above the share of other children of the donor. If the property transferred is to be treated as an advancement there is an intention on the part of the donor that the property given is to be considered as a part of that which the parent wishes the child to receive out of the estate or property of the parent as and when the child would otherwise inherit. Id. § 4.
Our statutes, 2 Mason Minn. St. 1927, §§ 8895 to 8898, inclusive, expressly provide that the doctrine is applicable only in cases of intestacy. That is the interpretation given to the statute in Kragnes v. Kragnes, 125 Minn. 115, 117,145 N.W. 785. This case has since been followed in Kuhne v. Gau,138 Minn. 34, 163 N.W. 982, and Leach v. Leach, 162 Minn. 159,202 N.W. 448. In the Kuhne case one of testator's children gave a mortgage on her interest in *Page 48 
certain lands devised to her and the other children of testator. The mortgage recited that during the lifetime of testator she had received from him $1,000 "as an advancement," but that she had not acknowledged receipt thereof in writing during his lifetime. For the "purpose of securing" that amount to the other children she gave this mortgage and promised to make such payment. In a suit to foreclose the mortgage she demurred to the complaint on the ground that the facts pleaded did not constitute a cause of action. The trial court decided against her. On appeal this court held (138 Minn. 35, 36,163 N.W. 982):
"The contention of defendants is that this mortgage is without consideration. The theory is this: The doctrine of advancements has no application to testate estates. If a father gives his daughter $1,000 as an advancement, such amount will, in the event of the father dying intestate, be deducted from the daughter's distributive share of the estate, but, if the father leaves a will, it will not be deducted from the share given her in the will, for the will is supposed to contain the final manifestation of the testator's bounty, and all advancements not saved by the will are extinguished (Kragnes v. Kragnes, 125 Minn. 115, 145 N.W. 785), and though it was understood at the time the payment was made that it should be an advancement, if the donor dies testate it becomes an absolute gift.
"The allegations of the complaint disclose that situation here. The advancement was a gift. Every advancement is a gift. Even in case of intestacy it remains a gift. An advancement is never to be returned. In case of intestacy, the gift reduces by so much the share of the heir receiving it, while in case of testacy the gift becomes absolute.
"It is settled in this state that, where such a gift is fully executed, a promise by the donee to repay it, is without consideration. Kragnes v. Kragnes, supra. If the allegations of the complaint are true, then this mortgage was without consideration and it cannot be enforced."
In the Leach case (160. Minn. 161, 202 N.W. 449) it was held that: *Page 49 
"Although an advancement is in the nature of a gift, it differs from the ordinary gift in that, while the property or money given need not be returned or repaid, it must be accounted for by the donee upon the distribution of the estate of the donor, sections 7404-7407, G. S. 1913. [Same as 2 Mason Minn. St. 1927, §§ 8895-8897.] Whether a particular gift was an advancement is a question to be determined by ascertaining the intention of the donor at the time the gift was made. 3 Woerner, Adm. (3d ed.) p. 1884."
4. The next problem to be considered is whether partial intestacy, as we have here, requires the application of a different rule than the one we have been considering. We think that may be answered best by quoting 1 R.C.L. 657, § 6, as follows:
"The doctrine of advancements is, as has been pointed out, based on the assumed desire of the donor to equalize the distribution of his estate among his children. Hence the veryfoundation of the rule prevents the doctrine from applyingunless the ancestor dies wholly intestate, and such is the general rule in the absence of statute, both in England and in the United States. The reason for this rule is obvious. If it were otherwise, it would be impossible for one to make a will which, in cases of partial intestacy, would give to one heir more than to another. The testator is conclusively presumed to have considered the advancements and the bequests made in the will collectively, and to have made distribution as he intended to make it. He need not treat his heirs or devisees as standing on an equal footing, and may give to one more than to another, or may equalize the matter, as he sees fit in his will. When the ancestor makes his will, he expresses his intention as to equalizing his estate, and his desires should be followed. The rule that the doctrine of advancements will not apply unless the donor dies wholly intestate means that the donor must die intestate as to both real and personal property. And where a statute provides that all advancements given by an 'intestate' shall be brought into hotchpot so that the estate may be equally distributed, it is the rule that the word 'intestate' means one dying wholly intestate and does not comprehend *Page 50 
partial intestacy." (Italics supplied.) 1 Am. Jur., Advancements, § 12; 18 C. J. p. 918, [§ 220]c.
5. Our statute, 2 Mason Minn. St. 1927, § 8895, provides:
"Any estate, real or personal, given by an intestate in his lifetime, to a child or other lineal descendant, when expressed in the gift or grant as an advancement or charged in writing by the intestate as such, or so acknowledged by the child or other descendant, shall be deemed an advancement to such heir, and treated as part of the estate of such intestate in the distribution of the same, and shall be taken by such heir toward his share of the estate. When the amount advanced exceeds the share of such heir he shall receive nothing in the distribution, but shall not be required to refund any part of such advancement. When the amount so received is less than his share, he shall be entitled to enough more to make up his full share."
Section 8898 provides for determination of value of advancements "made by the intestate to any heir." And, "for the purpose of determining what proportion any one who has received an advancement is entitled to, the court shall ascertain the value of the entire residue of such estate, by ordering an appraisal, or in such other manner as it may deem best."
6. The ascertainment of the parent's intention at the time of making transfer of property to the child is highly important. This thought is well expressed in 1 Am. Jur., Advancements, § 8, as follows:
"In order that a transfer of property from a parent to his child shall be considered an advancement, it must satisfactorily appear that an intention existed, coincidentwith the transaction, to treat it as a portion or settlement in life, as an anticipation of the child's share of the donor's estate if the latter should die intestate." (Italics supplied.)
The deed conveying the farm to the son was made a short time prior to the making of the will. The consideration paid by the son was $11,000, $2,000 in cash and $9,000 payable later. The father *Page 51 
thought $12,000 was its value, such is the son's testimony. The total personal estate for distribution is only $14,267.53. The consideration paid for the land therefore constituted by far the greater part of testator's residuary estate. There is no showing that the conveyance in any way expressed the "gift or grant as an advancement." Nor was it "charged in writing by the intestate as such, or so acknowledged by the child," unless we consider the son's approval of the will to be such acknowledgment. There is nothing in the record indicating that the father and son "coincident with the transaction" when the deed was made treated or considered the sale of the farm as an advancement. All we have is the father's statement in the will: "I have purposely omitted any bequests to my son * * * for the reason that I have already given him his just share of my Estate in the sale of the farm to him." More than a month later the son assented "to the conditions of said will" and waived his "statutory rights" as to himself, his heirs, or assigns.
Further to be noted is the fact that the court found "that there was no consideration for the writing signed by respondent and attached to said will." This being adequately sustained by the record, we find no need for further discussion concerning this particular phase of the controversy.
7. The language used in the present will can amount to nothing more than an expression of a "negative disinheritance." It is not unusual for a testator to provide that certain relatives shall receive no part of his estate. But such a provision "is entirely ineffectual as to his intestate property; * * *." The rule is that:
"Where testator does not, by will, dispose of the whole of his estate, no negative words of exclusion can prevent the rest of the property from passing under the statutes of descent and distribution."
And the same general rule applies where testator has made provision for an heir, apparently intending such provision to be all that the heir should receive, yet such heir takes his share of any intestate property. 1 Page, Wills (2 ed.) pp. 1390, 1391, § 818, and cases under notes; 69 C. J. p. 298, [§ 1323]b, and cases under note *Page 52 
21; see also Id. p. 1070, [§ 2304]cc; p. 1071, [§ 2305]dd, and 2306]ee, and cases cited under notes.
And in Pomroy v. Hincks, 180 N.Y. 73, 75, 72 N.E. 628, 629, we find the same thought thus expressed:
" 'It is a settled principle of law that the legal rights of the heir or distributee, to the property of deceased persons, cannot be defeated except by a valid devise of such property to other persons. * * * It was not sufficient to deprive an heir-at-law or distributee of what comes to him by operation of law, as property not effectually disposed of by will, that the testator should have signified his intention by his will that his heir or distributee should not inherit any part of his estate.' "
The quoted language was approved and confirmed in the later cases of Wells v. Squires, 191 N.Y. 529, 84 N.E. 1122, and In re Will of Trumble, 199 N.Y. 454, 465, 466, 92 N.E. 1073.
8. We can find no basis upon which to found a release on the part of respondent of his expectancy as an heir. Clearly, to constitute a release, there must be an agreement between the prospective heir and his ancestor. There is here no basis upon which to found any such agreement. Nor do we understand that appellant so claims, for in her reply brief she makes this statement:
"Respondent claims there was no consideration for the writing signed by respondent. We have not contended that there was. We have not contended that the writing itself was the release. Obviously, there would be no consideration for this writing, because it was executed after respondent was given the farms. We claim that the writing in the will, coupled with the statement signed by the respondent, is evidence of an oral agreement to the same effect entered into at the time the farms were deeded."
The trouble with appellant's contention is that there is no proof in the conveyances themselves, nor is there proof otherwise, that any advancement was intended; or that there was an agreement that by the conveyance of the farm respondent intended to release his right as an heir. The cases relied upon by her in this regard, *Page 53 
if she would but take time to read them, effectively and adversely dispose of this contention. We refer particularly to Mires v. Laubenheimer, 271 Ill. 296, 111 N.E. 106, and Boyer v. Boyer, 62 Ind. App. 73, 111 N.E. 952, in each of which there was ample proof of the existence of such agreement and that the parties had acted thereon in reliance upon its validity.
9. We need spend no time on appellant's claim that there is here proof of an equitable estoppel or an estoppel in pais. The former is defined —
"as the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either of property, of contract, or of remedy." 2 Dunnell, Minn. Dig. (2 ed. 1937 Supp.) § 3185, and cases under note 2.
As to the latter, —
"It can only be invoked to prevent fraud and injustice, and it is never carried further than is necessary to prevent one person from being injured by his reliance on the acts or declarations of another. Its object is to prevent the unjust assertion of rights existing independent of estoppel, and its effect is to create rights in the person in whose favor it operates." Id. § 3186, and cases under notes 8 and 9.
We therefore conclude that the result reached in the courts below is sound. The judgment therefore should be, and it is, affirmed.
MR. JUSTICE HILTON, incapacitated by illness took no part. *Page 54