**Gary VETTLESON, Appellant,**

v.

**SPECIAL SCHOOL DISTRICT NO. 1, Respondent.**

No. C8–84–1079.

Court of Appeals of Minnesota.

Jan. 29, 1985.

Roger A. Peterson, Joseph B. Nierenberg, Peterson, Engberg & Peterson, Minneapolis, for appellant.

Frederick E. Finch, Kathleen A. Hughes, Fredrikson & Byron, P.A., Minneapolis, for respondent.

Heard, considered and decided by FORSBERG, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

SEDGWICK, Judge.

This is an appeal from a judgment for respondent Minneapolis public school district on a misrepresentation claim brought by appellant Vettleson. The school district posted a seniority list for guidance counselors which included an unlicensed counselor senior to Vettleson. He claims to have relied on this list, and, convinced that his proposed layoff was proper, he obtained substitute employment at a lower salary. The trial court found no misrepresentation. We reverse.

## FACTS

Gary Vettleson was employed as a guidance counselor for the respondent Minneapolis school district, starting in 1971. In 1978, due to declining enrollment, the district for the first time began preparations for layoffs of tenured teachers. Vettleson was given a preliminary notice in May of 1978, and finally notified of his proposed discharge on August 17, 1978.

The school district, determining the layoffs by area of specialty, scheduled 12 guidance counselor positions for termination during the 1978–1979 school year. The layoffs, required by law to proceed in order of seniority, were determined based on a seniority list established by the school district and posted or generally available to the teachers. Vettleson was the most senior counselor laid off.

After Vettleson received his preliminary notice of the proposed layoff, he interviewed with the Robbinsdale school district. After receiving his final notice, he accepted a one-year position with that district, at a lower salary, on August 21, 1978.

Vettleson requested a discharge hearing, which was held on August 29. When the school district agreed to give him a one-year leave of absence to take the Robbinsdale position, the discharge hearing was adjourned.

Vettleson was employed in the Robbinsdale district for the 1978–1979 school year, earning approximately $7,300 less than he would have in Minneapolis. He was reinstated in his position with the Minneapolis district the following school year.

It was later discovered that a guidance counselor senior to Vettleson was not licensed as a counselor during the years 1976 to 1980. Vettleson, as the most senior counselor laid off, would have been retained had the license expiration been discovered.

At trial, Vettleson introduced violations reports which he claimed, based on a letter from state officials, were sent to the school district every year by the state Department of Education. The violations report for the 1977–1978 school year, which showed the license expirations, would have been received by the district in February, 1978.

The school district's director of personnel, Mack Sirois, testified that he had not seen the violations reports, or any printouts similar to them. Sirois testified that notice of licensure violations was received not by means of a printout or district-wide report, but by a private letter referring to a particular teacher. There was no such letter in the counselor's file. The district did not routinely check the licensure status of its more senior personnel.

## ISSUES

1. Was the trial court's finding that the school district did not misrepresent Vettleson's seniority status clearly erroneous?

2. Did Vettleson waive his claim of misrepresentation by taking a leave of absence rather than continue his discharge hearing?

3. Is Vettleson's claim barred by his failure to seek certiorari review?

## ANALYSIS

### 1. Claim of misrepresentation

The trial court found that Vettleson had failed to establish by a fair preponderance of the evidence that the school district had made any misrepresentation to him concerning the senior counselor's licensure status. The court also found that the school district did not have actual or constructive knowledge of the license violation, and had acted in good faith.

At the time of Vettleson's proposed discharge, in August, 1978, the district had just begun layoffs of tenured teachers. Neither the school district and its director of personnel, nor the teachers and their union, had had any experience with this type of termination.

A school district generally is required to hire only licensed teachers. Minn.Stat. §§ 125.04, 125.12, subd. 2 (1978). While a lapsed license would not be grounds for immediate discharge of a tenured teacher, the two-year unlicensed status was a gross

violation. The district does not appear to contest the fact that this teacher should not have been retained in preference to Vettleson.

■ The district's distinction between licensure status and seniority, which we recognize, is without practical significance in this case. The seniority list was apparently the sole document submitted to support the proposed teacher discharge in this instance. Since a list is separately drawn for each specialty area, the implied assumption is that each teacher on the list is licensed in that area. Although licensure status does not necessarily affect seniority, in that a lapse of license does not automatically result in a loss of seniority, it does affect rights of retention, which is the issue here.

Vettleson does not argue that the unlicensed teacher should have lost seniority, becoming less senior than he, but rather that she should not have been retained in preference to him. With this we agree.

Although there appear to be no cases on this issue, and the problem may not have been anticipated in 1978, we believe the school district, in a matter as important as tenured-teacher layoffs, had a duty to investigate the licensure status of its senior teachers, and, therefore, the seniority list should be considered a representation of that status. We note that teachers are required to file with the school district a copy of their license. Minn.Stat. § 125.11 (1978).

The school district's position, that the teachers proposed for discharge should have checked the personnel records themselves, is not tenable, particularly in light of the district's claim that it received no general violation reports and no record of license violations could be found except in individual files. The proposed personnel record search here would be far too burdensome. Although the teacher could challenge the licensure status of senior teachers at the termination hearing, he or she would have no idea which teachers might be unlicensed. There were approximately 90 guidance counselors senior to Vettleson at the time of his hearing. The burden on the individual teacher is prohibitive.

The school district's duty to ascertain the licensure status of its teachers is strongly implied by statute. *See,* Minn.Stat. §§ 125.11, 125.12, subds. 4, 6b(b). The teacher's right to contest licensure status in the course of a discharge hearing does not absolve the district of a responsibility for accurately representing such status.

If the seniority list is taken as a representation of licensure status, it is clear that the teachers were both intended to and justifiably did rely on the list.

■ Good faith is not a defense to a claim of misrepresentation, as liability may be found for a misrepresentation which is merely negligent. *Lewis v. Citizens Agency of Madelia, Inc.*, 306 Minn. 194, 198–99, 235 N.W.2d 831, 834–35 (1975). Although the factual dispute at trial centered on whether the school district had received notice of the licensure violation, such notice, or knowledge, of the error is not required. *Id.* at 198–99, 235 N.W.2d at 834. There is no question that the school district had access to the information. *Id.; Swanson v. Domning*, 251 Minn. 110, 86 N.W.2d 716 (1957) (true facts must be susceptible of knowledge).

The trial court's reliance on findings of good faith and lack of notice, as well as its implicit finding that no representation of licensure status was made, are clearly erroneous.

### 2. Waiver

The school district claims that Vettleson waived his right to contest his layoff on the grounds of the senior teacher's license violation, when he accepted the school district's offer of a leave of absence.

■ Waiver is the intentional relinquishment of a known right or privilege. *Hauenstein & Bermeister, Inc. v. Met-Fab Industries, Inc.*, 320 N.W.2d 886, 892

(Minn.1982). Vettleson did not waive his right to a hearing, as he attended and participated in a hearing on the discharge. At the hearing, he did accept a leave of absence, and did not contest the school district's right to discharge him; however, this action was taken in reliance on the seniority list. There is no indication that he had actual or constructive knowledge of a license violation among the teachers senior to him, or even that he was aware he could contest his discharge on this ground.

### 3. Failure to seek certiorari review

■ The school district contends that Vettleson's misrepresentation action is barred by his failure to seek judicial review of his discharge by means of a writ of certiorari. *See, Grinolds v. Independent School District No. 597*, 346 N.W.2d 123, 127 (Minn.1984).

This argument is without merit, as Vettleson was never discharged, agreeing instead to a one-year voluntary leave of absence. Thus, there was no action by the school board which was appropriate for certiorari review. The district's decision to enter into the agreement was not a judicial or quasi-judicial decision. *See, Honn v. City of Coon Rapids*, 313 N.W.2d 409 (Minn.1981). Moreover, Vettleson was not adversely affected by the decision.

Because we conclude that the judgment for the school district must be reversed, we do not reach the issues raised by the denial of appellant's post-trial motion.

### DECISION

The trial court erred in finding that there was no misrepresentation of senior teachers' licensure status to Vettleson. His claim is not defeated by the school district's good faith, nor its lack of notice of the license violation. Vettleson did not waive his right to contest his layoff on this basis, nor is his claim barred by a failure to petition for writ of certiorari.

Reversed.