In the Matter of the Petition of Peter **NELSON, Pamela Henney and LeAnne Henney, For cancellation of Certificate of Title No. 734751 and the issuance of a new Certificate of Title in the names of Petitioners.**

No. C8–91–2350.

Supreme Court of Minnesota.

Jan. 29, 1993.

As Amended on Denial of Rehearing March 23, 1993.

William H. Henney, Minnetonka, for appellants.

Michael J. Minenko, Minneapolis, for respondent Frank L. Stangel.

Peter I. Orlins, Richfield, for respondent Richfield Bank & Trust Co.

GARDEBRING, Justice.

This appeal arises upon a reversal by the Minnesota Court of Appeals of a judgment in Hennepin County District Court that respondent failed to timely redeem real property purchased at a sheriff's execution sale from appellants. We reverse the court of appeals decision and reinstate the judgment of the district court.

I.

At a sheriff's execution sale on April 6, 1990, appellants acquired residential real property owned by respondent, Stangel. Appellants paid $1,266.44 for Stangel's interest, which they argue is worth approximately $43,500.00. For property tax purposes, the 1991 market value of the property was assessed at $103,000.00.

Stangel had one year to redeem the property. Minn.Stat. §§ 550.24, 550.25 [1], and 550.26 [2] (1992). Since April 6, 1991, fell on a Saturday, Stangel was allowed to make the redemption payment on the following Monday, April 8, 1991. Minn.Stat. § 645.15 (1992).[3]

Late in the afternoon of April 8, 1991, Stangel's attorney received the redemption amount from his client. Stangel's attorney then tried to call appellants' attorney, to discuss delivery of the redemption payment, but appellants' attorney was not available and did not return the call. Stangel's attorney then mailed the check by certified mail, and it was received by appellants' attorney shortly before noon on Tuesday, April 9, 1991. On April 15, 1991, appellants' attorney returned the check on the grounds that the redemption was untimely.

Appellants then filed a Petition in Proceedings Subsequent to transfer title from Stangel. This petition was granted in Hennepin County District Court on September 18, 1991, but the court of appeals reversed,

1. "Within one year after the day of sale the judgment debtor * * * may redeem by paying to the purchaser the amount for which the property was sold, with interest * * *. If no such redemption be made, the senior creditor may redeem within five days after the expiration of such year, and each subsequent creditor within five days after the time allowed all prior lienholders * * *."

2. "The person desiring to redeem shall pay to the person holding the right acquired under such sale, or for the person to the sheriff or the court administrator of the district court of the county in which the real property is situated,

the amount required by law for such redemption * * *."

3. "Where the performance or doing of any act, duty, matter, payment, or thing is ordered, or directed, and the period of time or duration for the performance or doing thereof is prescribed and fixed by law, the time * * * shall be computed so as to exclude the first and include the last day of the prescribed or fixed period or duration of time. When the last day of the period falls on Saturday, Sunday or a legal holiday, that day shall be omitted from the computation."

in an unpublished decision, stating that "unique circumstances" required granting Stangel equitable relief. *In re Nelson,* slip op. at 5, 1992 WL 108134 (Minn.Ct.App., May 26, 1992). Among these unique circumstances was allegedly bad weather which prevented the mail plane carrying Stangel's redemption from landing at the Minneapolis–St. Paul airport. This information came from a letter sent by Stangel to the district court one month after the case was decided.

The legal issues raised by this case are:

1. Is a redemption effective if it is mailed on the final day of the redemption period, but received on the following day?

2. Did appellants' attorney act in bad faith?

3. Should the execution sale be set aside because of inadequacy of price?

4. Did appellants waive their right to refuse Stangel's untimely redemption by not notifying him of their rejection of his payment until six days after receipt?

5. Did the totality of the circumstances require granting equitable relief to Stangel for his untimely redemption?

## II.

■ Stangel's attempted redemption was untimely because payment was received one day after the end of the statutory redemption period. "[T]he right of redemption is a strict legal right, to be exercised, if at all, in accordance with the terms of statute by which the right is conferred, unless waived or extended by the party whose interests are to be affected." *State ex rel. Anderson v. Kerr,* 51 Minn. 417, 420, 53 N.W. 719, 719 (1892) (citations omitted); *see also First National Bank in Winnebago v. Boler,* 291 Minn. 185, 190 N.W.2d 94 (1971). For a redemption to be timely, it must be made "within one year after the day of [the execution] sale." Minn.Stat. § 550.25 (1992). If the deadline falls on a Saturday, the payment period includes the next Monday. Minn.Stat. § 645.15 (1992). Because Stangel's payment was not received until one day after the redemption deadline, we hold it was not timely.

## III.

■ Appellants' attorney did not act in bad faith by failing to return the phone call from Stangel's attorney on April 8, 1991. Stangel argues that the failure to return the phone call prevented him from making arrangements for payment, but he does not argue that he was prevented from making a timely redemption. Redemption payments may be made to either the person holding the right acquired in the sheriff's sale, the sheriff, or the court administrator of the county in which the property is located. Minn.Stat. § 550.26 (1992). Even if appellants' attorney had purposefully made himself unavailable, Stangel could still have redeemed the property through the sheriff or the court administrator. We hold, therefore, that appellants' attorney did not act in bad faith nor prevent Stangel from redeeming the property.

## IV.

■ Inadequacy of price by itself is generally insufficient to set aside an execution sale. *Weir v. United States,* 339 F.2d 82, 87 (8th Cir.1964) (citing *Graffam v. Burgess,* 117 U.S. 180, 192–3, 6 S.Ct. 686, 692–93, 29 L.Ed. 839 (1886)); *Guidarelli v. Lazaretti,* 305 Minn. 551, 233 N.W.2d 890 (1975). The mortgagor normally has a remedy for a low price in his right to redeem. *G.G.C. Co. v. 1st National Bank of St. Paul,* 287 N.W.2d 378 (Minn.1979). If, in addition to the low price, there are irregularities in which the sale is conducted, and such irregularities are the cause of the inadequate price, then equity may hold the sale invalid. *Lalor v. McCarthy,* 24 Minn. 417 (1878); *Kantack v. Kreuer,* 280 Minn. 232, 158 N.W.2d 842 (1968).

■ Stangel does not allege that any irregularities occurred in the conduct of the execution sale. He argues only that a court should set aside an execution sale when the price received is so low "as to shock the conscience of the court." Appellants paid approximately $900.00 for property with an assessed value of over $100,-

000.00. In *McCartney v. Frost*, 282 Md. 631, 386 A.2d 784 (Md.App.1978), the Maryland Court of Appeals set aside a sheriff's sale of property with a fair market value of $18,000.00 that sold for $2,000.00 because the price shocked the conscience of the court. As the trial court noted, however, Maryland has no right of redemption, whereas Minnesota provides the right of statutory redemption to a mortgagor whose property is sold at a sheriff's sale. Because statutory redemption gives the mortgagor the remedy of repurchasing the property for the price paid at the sale, a low price is actually a benefit to the mortgagor because less money will be required to redeem the property. We therefore affirm the ruling of the lower courts that the execution sale is not to be set aside for inadequacy of price.

### V.

■ Appellants are not estopped to reject the untimely redemption payment because they failed to object to its lateness for six days. Equitable estoppel is "the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, * * * as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse." *In re Beier's Estate*, 205 Minn. 43, 53, 284 N.W. 833, 838 (1939).

Stangel has not alleged any good faith reliance upon appellants' failure to immediately reject the tendered redemption payment, nor has he shown how the six-day delay led him to change his position for the worse. Further, six days is not a very long delay in returning the payment, especially when compared to the year Stangel had to redeem the property. The trial court found that the six-day delay was irrelevant to its determination that Stangel's redemption payment was untimely. We affirm the trial court, and also reject Stangel's argument that appellants should be estopped from refusing the payment.

### VI.

■ We also reverse the ruling of the court of appeals that the totality of the circumstances justifies granting equitable relief to Stangel to relieve him of his untimely redemption. We disagree that Stangel's legal remedy of statutory redemption was practically ineffective. *Nelson*, slip op. at 6, fn. 1 (citing *Ostrander v. Ostrander*, 190 Minn. 547, 549, 252 N.W. 449, 449–50 (1934)). Any ineffectiveness of statutory redemption in this case was due to Stangel's delay, and not to the impotence of the remedy.

We also disagree that Stangel was a "blameless plaintiff" who had fallen into "serious error" producing an unintended result; that he was not negligent; that appellants had knowledge of the mistake and attempted to enrich themselves because of it; and that these facts called upon the court of appeals to exercise its equitable powers to restore the status quo. *Nelson*, slip op. at 5 (citing *TCF Banking & Sav., F.A. v. Loft Homes, Inc.*, 439 N.W.2d 735, 738 (Minn.Ct.App.1989) (citation omitted), *pet. for rev. denied* (Minn. June 21 & July 12, 1989)).

As mentioned, the mistake in this case was Stangel's failure to timely redeem the property. In *TCF*, equitable relief was granted to the mortgagee bank because a clerical error caused the bank to bid too low at a foreclosure sale. Allowing statutory redemption at the low price would have unjustly enriched the mortgagor. *Id.* 439 N.W.2d at 737. Contrary to the bank's situation in *TCF*, which did not know of the clerical error, Stangel was aware of the statutory deadline. Any enrichment that accrues to appellants is precisely that contemplated by the sheriff's sale statutes, *i.e.*, that the owner of the property sold at sale would *not* be able to make the redemption payment and that the purchaser would obtain title. Such an enrichment could hardly be termed unjust, or every purchaser at a sheriff's sale could face a similar challenge when the mortgagor is unable to redeem.

## VII.

■ Finally, the court of appeals erred by considering Stangel's letter about the bad weather to the district court to be part of the record. "An appellate court may not base its decision on matters outside the record on appeal, and may not consider matters not produced and received in evidence below. * * *. Minn.R.Civ.App.P. 110." *Thiele v. Stich,* 425 N.W.2d 580, 582–3 (Minn.1988) (citation omitted). Because information about the weather was not presented to the trial court, as a matter of law the court of appeals erred in considering it part of the record on review. Policy reasons also support excluding the letter, as it is clearly hearsay and appellants were not able to present opposing evidence.

If the information about the weather is removed from the record, the only mistake that remains is Stangel's late redemption. If anyone is at fault, it is Stangel. Equity should not relieve Stangel of his own error. We therefore reverse the court of appeals and reinstate the judgment of the trial court.

PAGE, J., took no part in the consideration or decision of this case.