Lawrence A. LUCIO, Relator,

v.

SCHOOL BOARD OF INDEPENDENT SCHOOL DISTRICT NO. 625, ST. PAUL, MINNESOTA, Respondent.

No. C2–97–1031.

Court of Appeals of Minnesota.

Feb. 17, 1998.

Review Denied April 30, 1998.

Roger J. Aronson, Rischmiller, Knippel & Aronson, Minneapolis, for relator.

Jeffrey G. Lalla, General Counsel, ISD No. 625, St. Paul, for respondent.

Christina L. Clark, St. Paul, for amicus curiae Minnesota Education Association.

Considered and decided by HUSPENI, P.J., and HARTEN and WILLIS, JJ.

## OPINION

WILLIS, Judge.

On May 28, 1997, respondent Saint Paul school board gave relator Lawrence Lucio written notice of nonrenewal of his contract as a secondary-school principal. Lucio filed a petition for writ of certiorari challenging the school board's decision, claiming he had tenure and could be discharged only for cause and after a hearing. We reverse.

## FACTS

The parties submit this matter on a stipulated record. Independent School District No. 625, Saint Paul, Minnesota, employed Lucio as a school counselor for approximately 15 years, ending in August 1989. Lucio requested, and the school district granted, an unpaid leave of absence from August 1989 through June 1990, and Lucio received exten-

sions of his leave of absence through June 1992. The school district's procedures manual provides that a teacher who fails to give 90 days' advance written notice of an intent to return to duty or fails to report to an assigned position at the end of an unpaid leave of absence is deemed to have resigned.

In February 1992, Lucio notified the district in writing that he did not intend to return to active employment with the district for the 1992–93 school year, although he did not submit a written resignation. During and after his leave of absence from the school district, Lucio was employed in another district as an assistant principal for two years and a principal for four years.[1]

On June 13, 1995, the school district had on file Lucio's principal's license which had been issued September 11, 1990, and was to expire on July 1, 1995. The school district entered into a contract with Lucio on August 2, 1995, for his employment as a secondary-school principal for the 1995–96 school year. In July 1996, the school district notified Lucio that his principal's license had expired and it requested that he renew his license and file it with the school district. The school board rehired him as a secondary-school principal for the 1996–97 school year. Lucio renewed his license, effective October 17, 1996, and he claims he mailed a copy of the license to the school district; the school district claims that a copy of the license was never filed with the district.

Lucio was a member of the principals' union during the 1995–96 and 1996–97 school years. Article 9, section 2 of the collective bargaining agreement between the school district and the union provides that "[t]here shall be a three-year probationary period for new promotional appointments to the position of principal or assistant principal."

On May 27, 1997, the school board, without citing cause and without a hearing, voted to not renew Lucio's contract for the 1997–98 school year. Lucio challenges the school board's action by certiorari appeal.

## ISSUES

1. Does Lucio have standing to bring this claim?

2. Is Lucio a tenured teacher under section 125.17 who can be discharged only for cause and after a hearing?

3. Did Lucio waive his tenure rights?

4. Is Lucio entitled to attorney fees on appeal?

## ANALYSIS

### I. Standing

 The school board challenges Lucio's standing to bring this claim on the ground that he is not a "teacher" under Minnesota law because, for a 15–month period, he did not hold a valid principal's license and because he did not file a copy of his renewed license with the school district.[2] *See* Minn. Stat. § 125.17 (1996) (governing teacher tenure rights in cities of the first class).[3] "Standing goes to the existence of a cause of action and, when the facts are not disputed, is a legal issue that this court may determine." *Joel v. Wellman,* 551 N.W.2d 729, 730 (Minn.App.1996), *review denied* (Minn. Oct. 29, 1996).

School boards of independent school districts are required to employ and contract with qualified teachers. Minn.Stat. § 123.35, subd. 5 (1996).[4] "A qualified teacher is one holding a valid license * * * ." Minn.Stat. § 125.04 (1996); *see also* Minn.Stat. § 123.34,

---

1. The record reflects that Lucio was an assistant principal during the 1989–90 and 1990–91 school years and a principal during the 1992–93, 1993–94, and 1994–95 school years. The record does not show what Lucio did during the 1991–92 school year, although he represents in his brief that he was a principal in the Minneapolis school district that year.

2. Lucio contends that this issue is not properly before this court because the school board did not consider it below. But a party's standing to bring a claim may be raised at any time. *In re*

*Welfare of Mullins,* 298 N.W.2d 56, 61 n. 7 (Minn.1980). This issue is, therefore, properly before us.

3. Section 125.17 applies to teachers in school districts located in cities of the first class. A city of the first class is one with more than 100,000 inhabitants. Minn.Stat. § 410.01 (1996). Section 125.17, therefore, applies to teachers in the Saint Paul school district.

4. The term "teacher" includes principals. Minn. Stat. § 125.17, subd. 1(a).

subd. 10 (1996) (stating that a principal must hold a valid license). Additionally, a teacher is not "qualified" until the teacher has filed a copy of his or her license with the superintendent of the school district in which the teacher intends to teach. Minn.Stat. § 125.11 (1996).

The school board argues that because Lucio did not hold a valid license for a 15-month period in 1995 and 1996 and because the school district did not have a copy of Lucio's renewed license on file, he is not a "teacher."

The record shows that Lucio's license expired on July 1, 1995, but with a copy of that license in its file the school board entered into a contract with him on August 2, 1995. The district did not alert him to his unlicensed status until July 15, 1996, and Lucio acted promptly to renew his license.[5] The school district claims that Lucio did not file a copy of his renewed license with the district, but the school board nevertheless rehired him for the 1996–97 school year, and the school district apparently took no action to inform him that it did not have a copy of his license on file until he challenged the school board's May 1997 vote to not renew his contract.

■ A school district has a "duty to ascertain the licensure status of its teachers." *Vettleson v. Special Sch. Dist. No. 1,* 361 N.W.2d 425, 428 (Minn.App.1985). "While a lapsed license would not be grounds for immediate discharge of a * * * teacher, [a] two-year unlicensed status [is] a gross violation" of a school district's obligation to ensure that its teachers are qualified. *Id.* at 427–28. The evident purpose of the filing requirement in section 125.11 is to provide the school district with the information necessary to meet this obligation. If the school district did not know that Lucio's license was renewed as of October 1996, it had a duty under *Vettleson* to pursue the issue further. But if the school district knew that Lucio had a valid license, the purpose of section 125.11 was fulfilled. We conclude that under these circumstances the school district, not Lucio,

bore the burden of ensuring that the district's files were up to date.

■ A party's conduct may, under appropriate circumstances, equitably estop the party from asserting a certain claim or defense. This court determines de novo whether equitable estoppel applies to a party's conduct. *State v. Holmberg,* 545 N.W.2d 65, 73 (Minn.App.1996), *review denied* (Minn. May 21, 1996).

> Equitable estoppel is "the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, * * * as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse."

*In re Petition of Nelson,* 495 N.W.2d 200, 203 (Minn.1993) (quoting *In re Beier's Estate,* 205 Minn. 43, 53, 284 N.W. 833, 838 (1939)). Lucio was not licensed, and therefore could have no valid license on file, when the school board entered into a contract with him in August 1995. The school district, by its own admission, did not comply with section 123.35, subdivision 5, when it contracted with Lucio, because he was not a "qualified" teacher. Even though Lucio temporarily was not licensed and even if he failed to file his renewed license with the school district, the school board is equitably estopped from now relying on its own violation of statutory requirements to argue that Lucio cannot assert his rights under section 125.17. *Cf. Hudson v. Independent Sch. Dist. No. 77,* 258 N.W.2d 594, 596 (Minn.1977) (stating that where school board attempts to circumvent statutory requirement that "emergency" substitute teacher can serve no more than one year by hiring teachers on that basis for successive years, substitute will acquire probationary status) (citing *Perry v. Independent Sch. Dist. No. 696,* 297 Minn. 197, 201, 210 N.W.2d 283, 286 (1973)). We conclude,

---

**5.** While an initial applicant for a license must pass an examination, a license renewal requires only proof that the teacher has completed a required number of credit hours of continuing education. *Compare* Minn. R. 8700.0210, subpt. 1 (1997) (governing examination requirements for initial licensure) *with* Minn. R. 8700.0200, subpt. 3 (1997) (establishing requirements for license renewal) *and* Minn. R. 8700.0900, subpt. 4 (1997) (same).

therefore, that Lucio has standing to bring this claim.

## II. Tenure Issues

### A. Probationary period

Lucio argues that the school board erred in choosing to not renew his contract, without citing cause and without a hearing, as the tenure law allows in the case of probationary teachers. He claims that he acquired tenure with the school district as a result of 15 years of employment as a school counselor, that he retained tenure rights when he was reemployed by the school district as a principal, and that, because of his tenure rights, the school district could discharge him only for cause and after a hearing. The school district contends that because Lucio did not complete a new three-year probationary period in his position as principal, he was not tenured with respect to that position, and they could choose to not renew his contract.

We do not substitute our judgment for that of a school board. *Ganyo v. Independent Sch. Dist. No. 832*, 311 N.W.2d 497, 500 (Minn.1981). But we will reverse a school board's determination when it is based on an error of law. *Dokmo v. Independent Sch. Dist. No. 11*, 459 N.W.2d 671, 675 (Minn. 1990). The first three consecutive years of a teacher's employment with a school district in a city of the first class are a probationary period. Minn.Stat. § 125.17, subd. 2. At any time during the probationary period, the school board may immediately terminate the teacher's employment for cause or the board may choose to not renew the teacher's annual contract. *Id.*

> After the completion of such probationary period, without discharge, such teachers as are thereupon reemployed shall continue in service and hold their respective position during good behavior and efficient and competent service and shall not be discharged or demoted except for cause after a hearing.

Minn.Stat. § 125.17, subd. 3. The construction of a statute is clearly a question of law and therefore fully reviewable by the appellate courts. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985). This court interprets statutes according to their plain meaning. Minn.

Stat. § 645.08(1) (1996). Although Lucio left the school district for five years to work elsewhere, the school district did not discharge him during his first three consecutive years of employment with the school district or, for that matter, at any other time. The plain language of section 125.17, subdivision 3, provides that when the school district reemployed Lucio in 1995, he retained the tenure he had acquired with the school district.

To support its argument that Lucio had to begin an additional probationary period when he was hired as a principal, rather than as a school counselor, the school board cites *Minneapolis Fed'n of Teachers, Local 59 v. Minneapolis Special Sch. Dist. No. 1*, 270 N.W.2d 773 (Minn.1978). In *Local 59*, the Minnesota Supreme Court stated that the teacher tenure act

> was not intended to eliminate the distinctions between various types of teaching positions which have been created by those charged with administering the schools. To the contrary, the statute is intended to insure that school authorities respect the distinct positions they have established.

*Id.* at 778 (footnote omitted). But the issues before the court in *Local 59* included (1) whether a person was a "teacher" when employed by a school district as a tutor for two years, a contract teacher for one year, and again as a tutor for one year; (2) whether the person acquired tenure; and (3) if the person acquired tenure, to what position did it apply. *Id.* at 776–77. *Local 59* does not address whether a tenured teacher who changes positions within a school district must serve an additional probationary period in the new position; therefore, *Local 59* is not controlling on the issue before us.

This court has held that principals and assistant principals in a school district in a city of the first class who had completed their three-year probationary periods as teachers were not required to complete new probationary periods for their administrative positions. *Sweeney v. Special Sch. Dist. No. 1*, 368 N.W.2d 288, 290–91 (Minn.App.1985). In *Sweeney*, the school district employed all of the respondents for at least 15 years before they became principals or assistant prin-

cipals; the district then demoted them without citing cause and without a hearing. *Id.* at 290. The school district argued that no notices of cause. or hearings were required because the respondents had not served new probationary periods as principals or assistant principals and, therefore, were not tenured in those positions. *Id.* at 291. This court concluded that

> [t]he Teacher Tenure Act prescribes one period of probation of three years for all teachers. It does not require any new probationary periods for new "positions" that may be taken by a teacher, whether administrative or otherwise.

*Id.* Because Lucio completed his probationary period with the school district as a school counselor, the teacher tenure act does not require him to serve an additional probationary period as a principal. We conclude, therefore, that the school board's determination to not renew Lucio's contract was based on an error of law; it could discharge Lucio only for cause and after a hearing.

## B. Waiver

### 1. Absence without leave

■ The school board argues that Lucio waived his tenure rights when he notified the district that he did not intend to return to employment for the 1992–93 school year and, therefore, according to the school district's procedures manual, he resigned. The school board's argument is not supported by the plain language of Minn.Stat. § 125.17, subd. 3; neither has the school board cited a case holding that a break in a teacher's service with a school district waives preexisting tenure rights, and we are aware of no such case.

The teacher tenure act provides that a teacher who is reemployed by a school district after completing a probationary period shall not be discharged or demoted except for cause after a hearing. Minn.Stat. § 125.17, subd. 3. Lucio was reemployed by the school board as a principal after he had completed his probationary period with the school district. If the legislature had intended for a break in service with a school district to waive preexisting tenure rights, it could have so provided. But we cannot supply "what the legislature purposely omits or inadvertently overlooks." *Ullom v. Independent Sch. Dist. No. 112,* 515 N.W.2d 615, 617 (Minn.App.1994) (quoting *Renstrom v. Independent Sch. Dist. No. 261,* 390 N.W.2d 25, 27 (Minn.App.1986)) (internal quotes omitted).

■ "Upon the mutual consent of a teacher and a school board, a known right may be voluntarily waived." *Perry v. Independent Sch. Dist. No. 696,* 297 Minn. 197, 205–6, 210 N.W.2d 283, 289 (1973). While a teacher is entitled to abandon his or her tenure rights, whether the teacher actually abandons those rights depends on his or her "intention with respect to the matter." *Board of Educ. of City of Minneapolis v. Sand,* 227 Minn. 202, 210, 34 N.W.2d 689, 694 (1948). In *Sand,* a teacher who had completed his probationary period became an administrative assistant to the school superintendent and then returned to a teaching position. *Id.* at 204, 34 N.W.2d at 691. The court held that because the teacher did not intend to abandon his tenure rights, he did not lose those rights when he left his teaching position. *Id.* at 211, 34 N.W.2d at 694–95.

■ A fundamental purpose of section 125.17 is to protect teachers from summary administrative termination. *See Local 59,* 270 N.W.2d at 776. But tenure was not intended to create a system that deprives school boards of the ability to administer and operate the public school system effectively. *Frye v. Independent Sch. Dist. No. 625,* 494 N.W.2d 466, 467 (Minn.1992). It may frustrate the effective administration and operation of a public school system for a teacher, such as Lucio, not to return from a leave of absence when expected, but that is not the result of the operation of the teacher tenure act. Further, nothing in the teacher tenure act required the school board to reemploy Lucio, a teacher who had acquired tenure with the school district, for the 1995–96 school year. Because Lucio did not manifest an intention to waive his tenure rights solely by failing to return when his leave of absence ended, we conclude that he did not waive them.

### 2. Collective bargaining agreement

■ The school board also argues that the collective bargaining agreement between

the school district and Lucio's union effected a waiver of his tenure rights because the agreement requires a three-year probationary period for "new promotional appointments to the position of principal." Under the teacher tenure act, if a teacher completes a probationary period without discharge and is reemployed, the teacher shall not be discharged except for cause and after a hearing. Minn.Stat. § 125.17, subd. 3.

 Where the terms of a collective bargaining agreement and the terms of an applicable statute conflict, the statute controls. *Jerviss v. Independent Sch. Dist. No. 294,* 273 N.W.2d 638, 644 (Minn.1978). This court has rejected reliance on a collective bargaining agreement when the agreement is inconsistent with legislatively granted tenure rights. *See Lunde v. Independent Sch. Dist. No. 255,* 543 N.W.2d 703, 706 (Minn.App. 1996) (holding that school district and teachers cannot alter unrequested leave of absence deadline beyond June 1, as mandated by Minn.Stat. § 125.12, subd. 4 (1994), through collective bargaining agreement).

The plain language of Minn.Stat. § 125.17, subd. 3, does not allow a school board to discharge a teacher who has completed his or her probationary period except for cause and after a hearing. We need not determine whether Lucio was a "new promotional appointment to the position of principal" within the meaning of the collective bargaining agreement because, to the extent that the collective bargaining agreement conflicts with section 125.17, the statute controls and the collective bargaining agreement does not effect a waiver of Lucio's tenure rights.

### III. Attorney Fees

In his brief, Lucio makes an incidental request that this court award him attorney fees. A court may award attorney fees to a party if the party against whom attorney fees are charged asserted an unfounded position solely to delay or harass; asserted a frivolous claim or defense that is costly to the other party; or committed fraud on the court. Minn.Stat. § 549.211, subd. 3 (Supp.1997). Lucio has not properly moved for attorney fees under Minn.Stat. § 549.211, subd. 4 (Supp.1997), and we, therefore, do not award him attorney fees. But we note that there is no evidence that respondent acted in bad faith, asserted a frivolous claim or unfounded position, or committed fraud on this court.

### DECISION

The school board entered into a contract with Lucio for the 1995–96 school year and then rehired him for the 1996–97 school year knowing that he was temporarily not licensed and that the school district did not have a copy of Lucio's license on file. The school board, therefore, did not comply with the requirement of Minn.Stat. § 123.35, subd. 5, that it employ only qualified teachers, and it is estopped from arguing that Lucio is not a qualified teacher and thereby cannot assert his rights under Minn.Stat. § 127.17. Because Lucio acquired tenure with the school district as a school counselor, he is not required to serve a new probationary period as a principal. Lucio did not manifest an intention to waive his tenure rights by failing to return to work after a leave of absence nor does the collective bargaining agreement between the school district and Lucio's union effect a waiver of his tenure rights. Finally, because Lucio did not file a motion for attorney fees, we do not make a fee award.

**Reversed.**