Riley WASHINGTON, Relator,

v.

INDEPENDENT SCHOOL DISTRICT NO. 625, ST. PAUL PUBLIC SCHOOLS, Respondent.

No. C9–98–1828.

Court of Appeals of Minnesota.

March 30, 1999.

Marshall H. Tanick, Phillip J. Trobaugh, Mansfield, Tanick & Cohen, P.A., Minneapolis, MN (for relator).

Jeffrey G. Lalla, St. Paul, MN (for respondent).

Elizabeth A. Storaasli, Rebekah R. Syck, Boyd Agnew Dryer & Storaasli, Ltd., Duluth, MN (for amicus curiae Independent School District No. 709).

Considered and decided by KALITOWSKI, Presiding Judge, SHORT, Judge, and KLAPHAKE, Judge.

## OPINION

KALITOWSKI, Judge.

Respondent St. Paul Public Schools (the district) dismissed relator Riley Washington for insubordination and conduct unbecoming a teacher. Relator contends: (1) the district violated his tenure and due process rights by not giving him a proper hearing; (2) the district violated his right to a Tennessen warning; and (3) the dismissal was arbitrary, capricious, and not based on substantial evidence in the record.

## FACTS

Relator was employed by the Minneapolis Public Schools from December 1992 until August 1996, acquiring tenure in the Minneapolis school district pursuant to Minn.Stat. § 125.17 (1996). In August of 1996, relator took a leave of absence from the Minneapolis schools to work for the St. Paul Public Schools as an assistant principal at Highland Park High School.

On April 22, 1998, a female student filed a written complaint alleging improper conduct by relator. The district suspended relator for the balance of the 1997–98 school year. On May 19, 1998, the district's human rights specialist, with relator's attorney present, interviewed relator. On July 19, 1998, the district's human rights specialist filed a report recommending relator's discharge. On August 31, 1998, relator met with the district's interim superintendent. Relator recounted his version of the events to the interim superintendent and gave him a written account of the events. On September 3, 1998, the interim superintendent recommended respondent's discharge to the school board.

On September 8, 1998, the school board conducted a meeting regarding relator's employment. The agenda for the meeting referenced relator's initials but did not include his full name. The meeting was closed to the public pursuant to Minn.Stat. § 471.705, subd. 1d(c) (1998) ("A public body shall close one or more meetings for preliminary consideration of allegations or charges against an individual subject to its authority."). Relator was accompanied by his attorney, his mother-in-law and his father-in-law, all of whom were given an opportunity to speak. The student who accused relator also attended the meeting and briefly addressed the board.

After the meeting, the school board voted to discharge relator. On September 9, 1998, the district mailed relator a notice of termination, effective 30 days from receipt, detailing the allegations against relator and listing insubordination and conduct unbecoming a teacher as the reasons for relator's discharge.

## ISSUES

1. Does a tenured teacher who transfers to a school district in a city of the first class immediately acquire tenure in the new district?

2. Did the district violate relator's due process rights?

3. Did the district violate relator's right to a Tennessen warning?

4. Was relator's dismissal arbitrary, capricious, and not based on substantial evidence in the record?

## ANALYSIS

 This court will reverse a school board's decision to terminate a teacher only if the decision is fraudulent, arbitrary, unreasonable, not supported by substantial evidence in the record, not within the school board's jurisdiction, or based on an erroneous theory of law. *Ganyo v. Independent Sch. Dist. No. 832*, 311 N.W.2d 497, 500

(Minn.1981). The construction of a statute is a question of law, and thus is fully reviewable by this court. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985).

## I.

■ Relator contends he was a tenured employee and thus was entitled to a tenure hearing before being discharged. We disagree.

■■ "Tenure is the right to continue in permanent employment subject to termination only for cause and in compliance with procedural safeguards." *Berland v. Special Sch. Dist. No. 1,* 314 N.W.2d 809, 814 (Minn. 1981). Because tenure may be granted only by statute, no one can have a valid claim to tenure unless authorized by statute. *Board of Ed. of City of Minneapolis v. Sand,* 227 Minn. 202, 211, 34 N.W.2d 689, 695 (1948). Minn.Stat. § 125.17 (1996)[1] relates to tenure in districts in cities of the first class, which include Minneapolis and St. Paul. Minn.Stat. § 125.17, subd. 2, provides in part:

> All teachers in the public schools in cities of the first class during the first three years of consecutive employment shall be deemed to be in a probationary period of employment during which period any annual contract with any teacher may, or may not, be renewed as the school board * * * shall see fit.

Minn.Stat. § 125.17, subd. 3, goes on to state:

> After the completion of such probationary period, without discharge, such teachers as are thereupon reemployed shall continue in service and hold their respective position during good behavior and efficient and competent service and shall not be discharged or demoted except for cause after a hearing.

Relator contends that under Minn.Stat. § 125.17 the tenure he achieved in Minneapolis transferred with him when he went to teach in St. Paul. He supports this conclusion by referring to Minn.Stat. § 125.12, the statute controlling tenure in districts not in cities of the first class. He argues that because Minn.Stat. § 125.12 provides that upon transfer between districts a tenured teacher gains tenure after one additional year of teaching in the new district, the fact that section 125.17 has no provision for transfer means the legislature intended that upon transfer to a district in a city of the first class a previously tenured teacher would immediately be tenured in the new district. We disagree.

■ Statutes should not be read together unless there is an ambiguity in the original statute. *Sand,* 227 Minn. at 210, 34 N.W.2d, at 694. Because we conclude there is no ambiguity in Minn.Stat. § 125.17, relator's argument based on the language of Minn. Stat. § 125.12 is misplaced.

■ Under the plain language of Minn. Stat. § 125.17, subd. 3, teachers having achieved tenure rights retain those rights if "reemployed" and if the teachers "continue in service." A teacher, like relator, who transfers to a different district is not *re* employed by the new district, and does not "continue in service" with the new district. Because Minn.Stat. § 125.17, subd. 3, grants tenure only after a probationary teacher has been reemployed following a three-year probationary period, we conclude that a teacher transferring to a new district in a city of the first class must serve a three-year probationary period and then be reemployed before tenure attaches with respect to the new district. Reinforcing this analysis is the Minnesota Supreme Court's statement that, "the right to [tenure] is to be determined by the extent of continuous teaching employment *within a district * * *." Perry v. Independent Sch. Dist. No. 696,* 297 Minn. 197, 203, 210 N.W.2d 283, 287 (1973) (emphasis added).

■ Policy reasons also support our conclusion that Minn.Stat. § 125.17 requires an additional three-year probationary period. Tenure was not intended to deprive school boards of the ability to effectively administer and operate the public schools. *Lucio v. School Bd. of Ind. Sch. Dist. No. 625,* 574 N.W.2d 737, 742 (Minn.App.1998). Effective

---

1. Minn.Stat. § 125.17 and Minn.Stat. § 125.12, the associated section dealing with school districts in cities not of the first class, were recently renumbered as Minn.Stat. § 122A.40 (1998) and Minn.Stat. § 122A.41 (1998).

administration includes the need to evaluate teachers before granting tenure. *See Flaherty v. Independent Sch. Dist. No. 2144*, 577 N.W.2d 229, 236 (Minn.App.1998) (stating that the purpose of probationary employment is to provide school districts an opportunity to evaluate a teacher's skills).

Relator contends that *Lucio*, 574 N.W.2d 737; *Sweeney v. Special Sch. Dist. No. 1*, 368 N.W.2d 288 (Minn.App.1985); and *Sand*, 227 Minn. 202, 34 N.W.2d 689, support his argument that he was a tenured teacher in the St. Paul district. We disagree. These cases are distinguishable from the facts here because they all involve a teacher claiming tenure who had taught the required three years and then been reemployed by the *same* district.

We conclude that a tenured teacher who transfers to a school district in a city of the first class must first teach for three consecutive years and then be reemployed to achieve tenure in the new district.

## II.

■ Even without tenure rights, a hearing may be required under the Due Process Clause when there has been a deprivation of liberty or property protected by the Fourteenth Amendment. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Relator contends he was denied due process of the law because the district terminated his employment without conducting an appropriate hearing.

### A. Property interest

■ Relator contends he has a property interest because he had a "reasonable expectancy" of continued employment based on his interpretation of Minn.Stat. § 125.17. We disagree.

■ Property interests are not created by the constitution; instead, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (quoting *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709). Where the interest at

issue is not explicitly defined by contract or otherwise, there may still be a property interest sufficient to trigger the protections of procedural due process if the claimant could show that he or she had a legitimate claim of entitlement to job tenure. *See Perry v. Sindermann*, 408 U.S. 593, 602–03, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972) (noting that the rules and understandings in that case may have justified plaintiff's claim to continued employment absent sufficient cause). Such legitimate expectations could arise from other agreements implied from words and conduct, or from other actions by the alleged promisors. *Id.* However, subjective expectations of continued employment are not protected by procedural due process. *Id.* at 603, 92 S.Ct. at 2700.

Here, relator claims that he reasonably believed he was entitled to tenured status under Minn.Stat. § 125.17. We have concluded, however, that as a matter of law, realtor did not achieve tenure under Minn.Stat. § 125.17. Moreover, relator points to no policies or practices of the district that gave rise to a *legitimate* expectancy of continued employment. We thus conclude that relator's expectation of tenure did not entitle him to a due process hearing.

### B. Liberty interest

■ Relator contends his liberty interests were violated because he did not receive a name-clearing hearing as required by due process. Assuming that relator's liberty interests were implicated, we conclude he was not denied due process.

Once a property or liberty interest is found, due process requires a weighing of the particular interests involved to determine what process is due. *Humenansky v. Minnesota Bd. of Medical Examiners*, 525 N.W.2d 559, 566 (Minn.App.1994), *review denied* (Minn. Feb. 14, 1995). "The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). Where a person's liberty interests are at stake, that person is entitled to notice and an opportunity to be heard.

*Roth,* 408 U.S. at 573, 92 S.Ct. at 2707. Where a school district discharges an employee because of charges against the employee, "due process would accord an opportunity to refute the charge[s] before [school district] officials." *Id.*

Here, relator was told of the accusations against him the day the events allegedly occurred. He was given a copy of the student's written accusations against him, and was provided an opportunity to tell his side of the story to the school district's investigator, to the superintendent, and to the school board. Relator was accompanied by his attorney at these meetings, and both relator and relator's attorney addressed the school board. Moreover, relator's accuser was present at the school board meeting. We conclude relator was provided appropriate notice and ample opportunity to refute the accusations against him. Therefore, assuming relator's claim implicates a liberty interest, we conclude relator was provided all the process he was due.

### III.

Relator contends this court must reverse his dismissal because he did not receive a Tennessen warning before he was interviewed. We disagree.

Minn.Stat. § 13.04, subd. 2 (1998), states in part that

[a]n individual asked to supply private or confidential data concerning the individual shall be informed of * * * the purpose and intended use of the requested data within the collection agency, political subdivision, or statewide system * * *.

Here, the school district interviewed relator about an incident that took place within the school. Because relator was not asked to supply private or confidential information, we conclude relator was not entitled to a Tennessen warning.

### IV.

Relator contends the district's decision was arbitrary and capricious and not based on substantial evidence in the record. We disagree.

School boards must make specific findings supporting their decisions. *Dokmo v. Independent Sch. Dist. No. 11,* 459 N.W.2d 671, 675 (Minn.1990). If the findings are insufficient, the court can either remand for additional findings or reverse for lack of substantial evidence supporting the decision. *Id.*

Here, the school board concluded that relator engaged in conduct unbecoming a teacher and insubordination. Record Item No. 8, the student accuser's letter, described the events that allegedly took place in relator's office. Record Item No. 13, the final report by respondent's human rights specialist, also detailed the events that allegedly took place in relator's office. This report was based on interviews with many sources, including relator and relator's accuser. Finally, Record Item No. 20, a memorandum prepared by the district's interim superintendent, listed the events that allegedly took place. This report was written after the interim superintendent interviewed relator and read relator's written statement. We conclude that these items in the record provide substantial evidence supporting the school district's decision and the decision of the school district was neither arbitrary nor capricious.

### DECISION

A tenured teacher who transfers to a school district in a city of the first class must first teach for three consecutive years and then be reemployed by the district to achieve tenure in the new district. Because relator did not have tenure, he had no due process property interest in his job. Assuming relator had a liberty interest in clearing his name, he was provided all the process he was due. Because relator was not required to give any private or confidential information, the district did not violate relator's Tennessen rights. Finally, relator's discharge was supported by substantial evidence in the record and was neither arbitrary nor capricious.

**Affirmed.**